THIS OPINION HAS NO PRECEDENTIAL VALUE,  IT SHOULD NOT BE CITED 
 OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), 
 SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 The State, Respondent,
 v.
 Johnny Brewer, Appellant.
 
 
 

Appeal From Lexington County
Marc H. Westbrook, Circuit Court Judge

Unpublished Opinion No. 2004-UP-219
 Submitted January 29, 2004  Filed March 
 30, 2004

AFFIRMED

 
 
 
 Deputy Chief Attorney Joseph L. Savitz, III, of Columbia, 
 for Appellant.
 Attorney General Henry Dargan McMaster, Chief Deputy Attorney 
 General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, 
 Assistant Attorney General Derrick K. McFarland, all of Columbia; and Solicitor 
 Donald V. Myers, of Lexington, for Respondent.
 
 
 

PER CURIAM: Johnny Brewer was convicted of murder, second-degree arson, and larceny.  He was sentenced 
 to life imprisonment for murder, twenty-five years imprisonment for second-degree 
 arson, and ten years imprisonment for larceny, with the sentences to run consecutively.  
 Brewer appeals, arguing the circuit court erred by: 1) determining evidence 
 regarding correspondence between Starnes and an inmate who used the defense 
 of panic was relevant; and 2) failing to instruct the jury that the State had 
 the burden of disproving accident beyond a reasonable doubt.  We affirm.
FACTUAL/PROCEDURAL BACKGROUND
Brewer was indicted for murder, 
 second-degree arson, and larceny.  At trial, Brewer represented himself.  During 
 Brewers testimony, he admitted he strangled the victim to death, robbed her 
 house, and then set her house on fire. 
The State presented evidence Brewer killed the 
 victim because she interrupted him while he was searching her house for money 
 to pay drug debts.  Brewers explanation for the crimes was that he had staged 
 a robbery and set the victims house on fire because he panicked after accidentally 
 killing the victim.  In response to Brewers explanation that his actions were 
 motivated by panic, the State asked Brewer about correspondence he had with 
 another inmate who had used panic as a defense in a murder trial.  Brewer objected 
 to this question.  The circuit court overruled the objection. 
After the close of the evidence, Brewer 
 requested the circuit court charge the jury on accident and instruct them that 
 the State had the burden to disprove his accident defense.  The circuit court 
 charged the jury on accident but did not instruct them on which party had the 
 burden for establishing accident. 
Brewer was convicted of murder, second-degree 
 arson, and larceny.  He was sentenced to life imprisonment for murder, twenty-five 
 years imprisonment for second-degree arson, and ten years imprisonment for larceny, 
 with the sentences to run consecutively.  Brewer appeals.
DISCUSSION
I. Relevant Evidence
Brewer argues the circuit court erred by determining 
 evidence regarding correspondence between Brewer and an inmate who used the 
 defense of panic was relevant.  We disagree.
Relevant evidence is defined as evidence having 
 any tendency to make, the existence of any fact that is of consequence to the 
 determination of the action more probable or less probable than it would be 
 without the evidence. Rule 401, SCRE; see Rule 402, SCRE (All relevant 
 evidence is admissible, except as otherwise provided by the Constitution of 
 the United States, the Constitution of the State of South Carolina, statutes, 
 these rules [of evidence], or by other rules promulgated by the Supreme Court 
 of South Carolina.); Rule 403, SCRE (stating relevant evidence may be excluded 
 if its probative value is substantially outweighed by the danger of unfair prejudice).   
A ruling by a circuit court concerning the relevance 
 of evidence will be disturbed only upon a showing of an abuse of discretion.  State v. Shuler, 353 S.C. 176, 184, 577 S.E.2d 438, 442 (2003).
During direct examination, Brewer admitted strangling 
 the victim but stated he did not mean to kill her.  He testified that, after 
 he killed the victim, he made the scene appear to be a robbery before he set 
 the house on fire.  On cross, Brewer stated he had covered up the killing because 
 he had panicked.  He explained he had panicked in the past when faced with a 
 situation where someone had died. 
In response to Brewers claim that he had panicked 
 in this situation as he had done in the past, the State conducted the following 
 cross-examination:
STATE: In fact, Mr. Brewer, since youve been acting as your 
 own attorney, youve been having some correspondence, havent you? Youve received 
 some correspondence, havent you?
. . .
STATE: In fact, some of that mail has come from the law offices 
 of Norman Starnes and B.J. Quattlebaum, hasnt it?
DEFENDANT: I have received a letter from a couple of guys 
 that was in the jail who have been convicted.  They wrote me a letter back, 
 yes.
STATE: In fact, one of them, Norman Starnes, used the defense 
 of: I panicked when I killed  these two guys and buried them out in a field 
 and put lime on top of them. Didnt he? He himself used that defense, didnt 
 he?
Brewer objected, arguing the 
 information relating to Starnes was not relevant. The circuit court overruled 
 the objection. 
The State sought to introduce the evidence of correspondence 
 between Brewer and Starnes to demonstrate that Brewer had recently fabricated 
 the defense of accident and panic.  Because the testimony regarding the correspondence 
 had the tendency to affect the credibility of Brewers explanation of why he 
 committed the crimes, the circuit court did not abuse its discretion by admitting 
 the evidence. See Shuler, 353 S.C. at 184, 577 S.E.2d at 442.
Starnes further contends the State presented no 
 evidence suggesting Brewer and Starnes colluded to fabricate Brewers defense.  
 Relying on State v. Bailey, 279 S.C. 437, 308 S.E.2d 795 (1983), Brewer 
 argues a baseless allegation is irrelevant and grounds for reversal.
In Bailey, the defendants father and brother 
 plotted to procure perjured testimony on the defendants behalf. Id. at 440, 308 S.E.2d at 797.  Because the defendant had no knowledge of the plan, 
 the circuit court ruled the evidence irrelevant because it did not go to any 
 material issue at trial. Id.
Here, Brewer admitted to corresponding with Starnes 
 and to knowing about the defenses Starnes used at trial.  Unlike Bailey, 
 the State was questioning Brewer concerning correspondences in which he was 
 involved.  Further, the issue involved was a material issue in Brewers trial.  
 Thus, Bailey is inapplicable to the facts of this case. [1] 
II. Jury Charge on Accident
Brewer argues the circuit court erred by failing 
 to instruct the jury that the State had the burden of disproving accident beyond 
 a reasonable doubt.  We disagree.
The law to be charged to the jury is determined 
 by the evidence presented at trial. State v. Lee, 298 S.C. 362, 364, 
 380 S.E.2d 834, 835 (1989).  The trial judge should charge only the law applicable 
 to the case [because] . . . . [p]roviding instructions to the jury which do 
 not fit the facts of the case may tend to confuse the jury. Id. at 364, 
 380 S.E.2d at 836 (internal citations omitted).  However, a trial court commits 
 reversible error if it fails to give a requested charge on an issue raised by 
 the evidence. State v. Hill, 315 S.C. 260, 262, 433 S.E.2d 848, 849 
 (1993).
Brewer appeals because, although the circuit court 
 gave a charge on accident, it did not instruct the jury regarding which party 
 had the burden of establishing accident.  We affirm because we hold the evidence 
 did not support a charge on accident, and therefore, the sufficiency of the 
 accident charge is immaterial.
Brewer requested the following jury charge: [T]he 
 State bears the burden of proving beyond a reasonable doubt that the death of 
 [the victim] was not the result of an accident. 
Brewer claimed his explanation of how the killing 
 occurred supported a charge on accident.  At trial, Brewer testified:
It happened quick.  She was pulling, pulling, and I wouldnt 
 stop.  I grabbed the phone.  [The victim] at that time couldnt stop me.  She 
 grabbed the teapot.  She swung it at me and I dont know even where it hit me 
 or if it hit me at all.  I mean, it was just quick.  After that, you know, she 
 kept  she kept struggling, you know, swinging at me.  As far as the scratches, 
 that happened some time during the incident.  That was not while I was  I was 
 not  I was not on top of her choking her out or nothing like that.
We struggled and I just held 
 her down.  I held her down.  I had her  I had her neck in my arms.  She was 
 scratching and clawing.  I cant tell you exactly how it went down as far as 
 the fighting on the floor.  There was a struggle; it happened quick.  Before 
 I know it she was  she was dead . . . 
For a homicide to be excusable on the ground of 
 accident, it must be shown that the killing was unintentional, that the defendant 
 was acting lawfully, and that due care was exercised [in the use of force]. State v. Goodson, 312 S.C. 278, 280, 440 S.E.2d 370, 372 (1994).
Because Brewer presented no evidence from which 
 the jury could have found the victims death occurred by accident, a jury charge 
 on accident was not warranted. [2]   See Lee, 298 S.C. at 364, 380 
 S.E.2d at 835 (The law to be charged to the jury is determined by the evidence 
 presented at trial.); see also Goodson, 312 S.C. at 280-81, 440 
 S.E.2d at 372 (holding [h]omicide is excusable on the ground of accident when 
 it appears that the defendant was acting lawfully in self defense and the victim 
 was killed unintentionally).  Therefore, we decline to rule on the sufficiency 
 of the accident charge.  State v. Aleksey, 343 S.C. 20, 36, 538 S.E.2d 
 248, 256 (2000) (holding an appellate court may affirm for any reason appearing 
 in the record).
CONCLUSION
For the foregoing reasons, Brewers convictions are
AFFIRMED.
HOWARD, KITTREDGE, and CURETON, JJ., concurring.

 [1] Brewer also argues the States cross-examination of Brewer concerning 
 the correspondence with Starnes penalized Brewer for exercising his right 
 to self-representation.  To support this claim, Brewer relies on State 
 v. Brown, 289 S.C. 581, 590, 347 S.E.2d 882, 887 (1986) (It is impermissible 
 for the State to argue in favor of         guilt . . . based upon the accuseds 
 assertion of a constitutional right.).  Because this issue was not raised 
 to or ruled upon by the circuit court, it is not preserved for appellate review. See Humbert v. State, 345 S.C. 332, 338, 548 S.E.2d 862, 
 866 (2001).  
 [2] Brewer did not request a jury charge on self-defense.  Further, the 
 evidence did not establish Brewer believed he was in imminent danger of losing 
 his life or sustaining serious bodily injury, or he actually was in such imminent 
 danger when he killed the victim.  See Goodson, 312 S.C. at 
 280, 440 S.E.2d at 372 (holding for a jury charge of self-defense to be warranted 
 the defendant must have actually believed he was in imminent danger of losing 
 his life or sustaining serious bodily injury, or he actually was in such imminent 
 danger).  Additionally, Brewer was in the victims home at the time of the 
 killing. See State v. Chambers, 310 S.C. 43, 44, 425 S.E.2d 
 45, 46 (Ct. App. 1992) (holding even a lawful guest has a duty to retreat 
 if possible, meaning the guest cannot assert self-defense unless he establishes 
 this duty was fulfilled).